**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Shannon Alley**<br>3827 Oak Harbor Road<br>Fremont, Ohio 43420<br><br>And all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>**Continuing Healthcare Solutions, Inc.** d/b/a Continuing Healthcare of Milan, CHS Employment Services, LLC, CHS Employment Services II LLC, Milan Skilled Nursing, LLC<br>7261 Engle Road, Suite 200<br>Middleburg Heights, Ohio 44130<br>*Serve: Benjamin J. Parsons*<br>5890 Venture Drive, Suite D<br>Dublin, Ohio 43017<br><br>Defendant. | ) | Case No.:<br><br>Judge:<br><br>**INDIVIDUAL AND CLASS ACTION COMPLAINT WITH JURY TRIAL DEMAND ENDORSED HEREON**<br><br>Zachary J. Murry (0087421)<br>BARKAN & ROBON LTD.<br>1701 Woodlands Drive<br>Suite 100<br>Maumee, Ohio 43537<br>Phone: (419) 897-6500<br>Fax: (419) 897-6200<br>zmurry@barkan-robon.com<br><br>*Attorney for Plaintiffs* |

Now come Plaintiff Shannon Alley and all others similarly situated, by and through undersigned counsel, and for their Complaint against the Defendant, hereby state and aver as follows:

## PRELIMINARY STATEMENT

Plaintiff Shannon Alley individually and on behalf of a putative class of all others similarly situated ("Class"), bring this action of fraud, claim for unpaid wages, and retaliation against Continuing Healthcare Solutions, Inc.

## PARTIES

1. At all relevant times, Plaintiff Shannon Alley is a resident of Fremont, Ohio located in Sandusky, County Ohio.

2. At all relevant times, Defendant Continuing Healthcare Solutions, Inc., is a healthcare company with headquarters located in Cuyahoga County, Ohio. At all times alleged herein, Defendant includes and included any and all officers, administrators, employees, agents, representatives and any and all other persons acting on its behalf. Upon information and belief, Continuing Healthcare Solutions, Inc. is a parent company which exercises uniform control over several other incorporations and limited liability companies including but not limited to Home Health Services, LLC, Continuing Healthcare Solutions, Inc., Continuing Healthcare of Milan, Geneva Shores, Inc., Bowerston Hills Nursing and Rehabilitation, Inc., Roselawn Gardens Nursing and Rehabilitation, Inc., Green Ridge Meadows Care Center, Inc., Fairview Meadows Care Center, Inc., Riverside Landing Nursing and Rehabilitation, Inc., Crestwood Ridge Nursing and Rehabilitation, Inc., Pine Ridge Nursing and Rehabilitation, Inc., Hillside Nursing and Rehabilitation, Inc., Peebles Place Care Center, Inc., Mellon Meadows Care Center, Inc., Vienna Care Center, Inc., Sienna Skilled Nursing & Rehabilitation, Inc., CHS Therapy, Inc., Belpre Landing Nursing & Rehabilitation, Inc., Parsons Law Office, LLC, Monarch Meadows Nursing & Rehabilitation, Inc., CHS Erie Management, LLC, CHS Management Services, LLC, CHS Therapy, LLC, CHS Employment Services, LLC, CHS Employment Services II LLC, CHS Hospice & Palliative Care Services, LLC, Beverly Health Care Co., LLC, JB Therapy Holdings, LLC, Western Reserve Healthcare Co., LLC, CHS Realty Holdings, LLC, Adaptive Rehabilitation Services, LLC, Niles Skilled Nursing, LLC, Mineral Ridge Skilled Nursing and Residential Care, LLC, Milan Skilled

Nursing, LLC, Niles Residential Care, LLC, Austintown Residential Care, LLC, Boardman Skilled Nursing, LLC, Lisbon Skilled Nursing and Residential Care, LLC, The CHS Hospice Foundation, Grace Woods Niles Realty, LLC, Grace Woods Niles OPCO, LLC, Odyssey Rehabilitation Services, LLC, Remedy Therapy Services, LLC, Continuing Healthcare of Cuyahoga Falls, LLC, Continuing Healthcare of Gahanna, LLC, Vista Realty Holdings, LLC, Milan Skilled Nursing Realty, LLC, Niles Skilled Nursing Realty, LLC Niles Residential Care Realty, LLC, Remedy Therapy Services of Minnesota, LLC, Wickliffe Healthcare Realty, LLC, Alternative Living Solutions Charities, CHS Consolidated Group, LLC, Adaptnc, LLC, Valor Ambulance, LLC, Lynk Healthcare Solutions, LLC, Remedy Therapy Services of Michigan, LLC, Continuing Healthcare of Willowhaven, LLC, Continuing Healthcare of Cedar Hills, LLC, Continuing Healthcare of Adams Lane, LLC, Continuing Healthcare Sterling Suites, LLC, Continuing Healthcare Forest Hills Apartments, LLC, Continuing Healthcare Beckett House, LLC, Continuing Healthcare Shadyside, LLC, Continuing Healthcare Forest Hills, LLC, Continuing Healthcare Beacon House, LLC, Beckett House Realty, LLC, Willow Haven Realty, LLC, Zandex Realty Holdings, LLC, Continuing Healthcare of Toledo, LLC, Zandex Operations Holdings, LLC, Adams Lane Realty Holdings, LLC, Beacon House Realty Holdings, LLC, Cedar Hill Realty Holdings, LLC, Shadyside Realty Holdings, LLC, Sterling Suites Realty Holdings, LLC, Forest Hill Realty Holdings, LLC, Lifeline Response Services of Southeastern Ohio, LLC, CHS Realty Holdings II, LLC, Taylor Street Realty Holdings, LLC, CHS Tech Investments, LLC, Forest Hill Independent Living, LLC, Continuing Healthcare Cottages at Forest Hill, LLC, Austintown Residential Care Realty, LLC, Lisbon Skilled Nursing and Residential Care Realty, LLC, Mineral Ridge Nursing and Residential Care Realty, LLC, CHS Employment Services II, LLC, Adaptca, LLC, CHS Therapy Employment

Services, LLC, Harbor Medical Equipment, LLC, Magnolia Ranch Properties, LLC, SNF Services Holdings, LLC, CHS Transportation Services, LLC, Blossom Care Center of Cuyahoga Falls, LLC, Gahanna Rehabilitation and Nursing Center, LLC, and Continuing Healthcare Solutions of Toledo, LLC.

3. At all times alleged herein, Defendant includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

4. At all times herein mentioned, each of the Defendant was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint ventures of each of the remaining Defendant herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

5. At all times herein, Defendant acted under and availed themselves of the color of Ohio law in the operation of their business, which included but was not limited to operation of their businesses within the geographic confines of Ohio and administration of benefits on behalf of its employees and contractors.

## JURISDICTION AND VENUE

6. This court has jurisdiction over this action pursuant to 28 U.S.C. §1293 and 28 U.S.C. § 1367.

7. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. §1391, as the events giving rise to the Plaintiff's claims occurred within this judicial district and Defendant is geographically situated within the territory served by the U.S. District court for the Northern District of Ohio, Western Division.

## FACTS

**A. Shannon Alley's Individual Claims**

8. Mrs. Shannon Alley began employment with Continuing Healthcare Solutions, Inc. ("CHS") at the Milan nursing facility location in June of 2020 as a nurse's aide. Her first paycheck was dated July 3, 2020. She did not consent to any health benefits or supplemental insurance benefits when she began employment with CHS. However, she was informed that certain coverages were provided as employee benefits to all employees.

9. The identification of these coverages, and the employee deduction from Plaintiff's for the same were identified on Plaintiff's pay stubs. These pay stubs and alleged information about the coverages provided, were maintained exclusively on an electronic portal operated, maintained, and controlled by the Defendant.

10. During Mrs. Alley's employment with Continuing Healthcare Solutions, she frequently picked up additional shifts, often working 80 or more hours per week, and earning overtime in addition to her base pay.

11. The FLSA requires covered employers to pay their employees a minimum wage of $7.25 per hour and overtime compensation for hours of work exceeding 40 hours in a work week at the rate of 1.5 times an employee's regular rate of pay. 29 U.S.C. §§ 206(a), 207(a)(1). Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions. Ohio Const. Art. II, § 34a; Ohio Rev. Code §§ 4111.02-.03.

12. A covered employee "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

13. Mrs. Alley's base wage was $16.75/hour, with an overtime rate of $25.13/hour.

14. Beginning in approximately the Fall of 2022, and throughout the remaining duration of Mrs. Alley's employment with Continuing Healthcare Solutions, Inc., her overtime rate was not consistent with 1.5 times her regular rate due to alleged shift differentials and other internal practices of the Defendant. Indeed, her overtime rate was rarely the same from paycheck to paycheck, making it difficult of Plaintiff to verify the accuracy of her wages. True copies of Plaintiff's paystubs, with personal information redacted, are attached hereto as **Exhibit 1**, and incorporated herein by reference.

15. Plaintiff's ability to calculate her wages was further complicated by the presence of multiple deductions for alleged insurance and other coverages from her gross wages.

16. As noted above, at no point in her employment was Plaintiff provided the opportunity to reject or alter the coverages provided by virtue of her employment. Upon information and belief, enrollment in these employer-controlled and operated employee benefits plans was mandatory for Plaintiff, and all others employed by the Defendant and comprising the putative Plaintiff class.

17. Ms. Alley was not provided with access to the alleged plan documents for the employee benefits allegedly provided and copies of plan information, to the extent that it was maintained, was exclusively within the possession, custody and/or control of the Defendant as the paying party and/or plan administrator.

18. On or about January 2022, Mrs. Alley was off work for an extended period of time with COVID. Pursuant to her belief that she had short term disability coverage through the Defendant---and as evidenced by the deductions for same from each paycheck---Plaintiff applied for short-term disability coverage through Guardian Life Insurance Company, the stated carrier.

19. Plaintiff was subsequently denied her short-term disability claim due to alleged non-enrollment in the plan. A copy of the Denial Letter is attached hereto as **Exhibit 2**, and incorporated here by reference.

20. Upon questioning the Defendant about the denial, Ms. Alley was informed that the denial was in error and was assured that short-term disability coverage was provided.

21. Defendant made no efforts to assist the Plaintiff with her benefits denial, and Plaintiff subsequently requested reimbursement for the premiums paid. Despite the ongoing situation with the short-term disability carrier, and the denial of benefits, Mrs. Alley still relied on her employer and believed its representations that the denial was due to an error by the carrier.

22. Indeed, Ms. Alley continued to work diligently for the Defendant, fulfilling all employment duties, and regularly working weeks of 80 hours.

23. Plaintiff's trust in the Defendant was so great that, when her husband became terminally ill in March 2023, Plaintiff moved him into the Defendant's facility to provide end of life care until his passing in July 2023.

24. Following her husband's passing, in fall of 2023, Plaintiff began to notice additional inconsistencies with her wage calculations and the coverages identified in her pay checks. Her requests for additional information from the Defendant was ignored and/or not responded to.

25. Concerned about the lack of information from the Defendant, Plaintiff attempted to conduct a review of her pay records and benefits coverages through the Defendant's online portal beginning in early 2024.

26. Upon information and belief, Defendant was aware that the Plaintiff was attempting to access its online system to obtain information about her wages, hours, and employee, benefits. Upon information and belief, Defendant took actions which resulted in Plaintiff, and other members of the putative class, from being able to access said information.

27. Plaintiff sent email messages to the Defendant regarding this issue. These emails were ignored and Ms. Alley's access to the system remained limited through the duration of her employment. Copies of the email communications are attached hereto as **Exhibit 3**, and incorporated herein by reference.

28. At all relevant times, Plaintiff was a "model" employee who satisfactorily performed all aspects of her job duties. A copy of Plaintiff's July 2024, Performance Review is attached hereto as **Exhibit 4**, and incorporated herein by reference.

29. Faced with the loss of access to her employment documentation, Ms. Alley began to investigate the alleged employee benefits coverages identified on her paystubs.

30. Subsequent investigation through the spring and summer of 2024 determined that numerous employee benefit deductions identified on her pay stubs were for insurance and other coverages ***that did not exist***.

31. At all relevant times, as the paying party and, upon information and belief, as plan administrator and/or the Plaintiff's employer, Defendant had actual knowledge of the fact that the coverages were not in effect/existence and/or had lapsed due to the express actions of the Defendant.

32. These fraudulently identified coverages---for which money was deducted from each of Plaintiff's paychecks---included, but were not limited to:

a. Aetna Accident and Critical Care from July 1, 2020, to December 31, 2020. *See* AETNA Policy Document, attached hereto as **Exhibit 5**, and incorporated herein by reference;

b. Chubb Insurance for Long Term Care;

c. AFLAC Insurance coverage of any type, prior to May 2023; and

d. Guardian Life Insurance short-term disability coverage.

33. By, at earliest, Fall of 2024, Plaintiff discovered that, upon information and belief, the amount of wages wrongfully withheld by the Defendant, under the auspices of the fraudulent employee benefit deductions, exceeded $8,500.00 during the course of her employment with the Defendant.

34. At that time, Plaintiff began to discuss the fraudulent actions of the Defendant with her fellow employees and attempted to alert them to the endemic wage theft being engaged in by the Defendant.

35. Upon information and belief, Defendant became aware of the Plaintiffs' actions to organize and inform her co-workers. Upon information and belief, in direct response to the Plaintiff's actions, the Defendant began to retaliate against her.

36. Almost immediately, in August 2024, the Defendant began to limit the shifts and hours that the Plaintiff could work.

37. The Defendant gave no explanation for this change in the Plaintiff's work schedule and her employer-mandated inability to pick up shifts. Indeed, the change was significant in light of the lack of any restriction placed on the Plaintiff's ability to work prior to her disclosure of the Defendant's fraudulent and willful misconduct.

38. In addition, other employees were permitted to pick up shifts and work as many hours as they wanted to. Copies of text messages relating to shift scheduling are attached hereto as **Exhibit 6**, and incorporated herein by reference.

39. Plaintiff's access to her pay information was further restricted and, on January 22, 2025, Plaintiff was terminated without cause.

40. Out of an abundance of caution, on or about February 6, 2025, Mrs. Alley filed a complaint with the Ohio Civil Rights Commission alleging retaliation in response to her investigation into the Defendant's fraudulent conduct.

41. On May 5, 2025, Plaintiff received her Notice of Right to Sue from the Ohio Civil Rights Commission.

42. As of the date of this filing, the exact nature scope, and amount of the fraud perpetrated upon the Plaintiff, and the putative plaintiff class, is unknown, However, upon information and belief, Plaintiff's wages were fraudulently withheld and/or reduced by an amount in excess of $8,500, over the course of her employment with the Defendant.

43. In light of the systemic and companywide practices evidenced by the fraudulent conduct of the Defendant, the exact scope of the liability of the Defendant to Plaintiff and the putative class is unknown, but is likely to include substantially all of the Defendant's employees, across multiple facilities.

44. As a direct and proximate result of Defendant's tortious misconduct, as described herein, Plaintiff suffered pecuniary injuries as well as great pain, suffering, mental anguish, and emotional distress.

45. As a direct and proximate result of Defendant's tortious misconduct Plaintiff has been damaged, in an amount to be determined at trial, in excess of $75,000.00.

46. Plaintiff pleads that the discovery rule should be applied to toll the running of any statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that the Plaintiff had been injured, the cause of the injury, and the tortuous nature of the wrongdoing that caused the injury.

47. Plaintiff's discovery of Defendant's fraud, theft, and breach of duty, is premised on obtaining documentation from third parties and in the face of the Defendant's active and willful obfuscation of material facts and the truth.

48. Despite diligent investigation by Plaintiff into the cause of her injuries, the nature of Plaintiff's injuries and damages and their relation to Defendant's wrongful conduct was delayed and could not have been discovered, until a date within the applicable statute of limitations for filing each of Plaintiff's claims.

49. Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by the Defendant when it had a duty to disclose those facts. The Defendant's purposeful and fraudulent acts of concealment have kept Plaintiff ignorant of vital information essential to the pursuit of Plaintiff's claims, without any fault or lack of diligence on Plaintiff's part, for the purpose of obtaining delay on Plaintiff's filing of their causes of action. The Defendant's fraudulent concealment did result in such delay.

50. Defendant is estopped from relying on the statute of limitations defense because Defendant failed to timely disclose, among other things, facts evidencing the lack of employee benefits actually provided to the Plaintiff during her employment.

**B. Class Action Allegations**

51. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

52. Plaintiff brings this action on her own behalf and as a class action on behalf of the Class defined herein, pursuant to and properly maintainable under Civ. R. 23. The Class consists of an unknown number of individuals that may exceed 100, who have been victimized by the fraudulent, negligent, and otherwise tortious conduct of the Defendant.

53. Defendant subjected Plaintiff and each member of the Class to the same wrongdoing and harmed them in the same manner. Now, Plaintiff and the members of each of the respective classes seek to enforce the same rights and remedies pursuant to the same theories: Fraud; Breach of Fiduciary Duty; Fair Labor Standards Act, 29 USC § 201, *et seq*.; Ohio Wage and Hour law, OH Rev. C. §4111.01, *et seq*., ERISA, 29 U.S.C. § 1001, *et seq*., ,and Negligence.

54. *Numerosity*. The number of potential class claims is exclusively within the custody and control of the Defendant. The proposed class is so numerous that individual joinder of their members is impracticable, but estimated to be more than 100 members, comprising all individuals whose pay was subject to fraudulent deduction.

55. *Typicality*. Plaintiff's claims are typical of the claims of the respective Class in that the claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory as their claims.

56. *Adequacy of Representation*: Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Undersigned counsel has experience in prosecuting complex lawsuits and litigating class and mass tort litigation, including but not limited to counsel's appointment by the Northern District of Ohio as a member of the class counsel in the action captioned *In re: East Palestine Train Derailment*, OHND Case No. 4:2023cv00242.

57. Plaintiff and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to the Class.

58. *Superiority of Class Action and Impracticability of Individual Actions*: Plaintiff and the members of the Class suffered harm as a result of the Defendant's fraudulent misconduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of the Class is impractical. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class Members. Adjudication of individual Class Members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other Class Members to protect their interests.

**FIRST CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

59. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

60. At all relevant times, Plaintiff and Defendant shared an exclusive relationship of privilege. This privilege was created by the Parties' employment relationship as well as by virtue

of the Defendant's exclusive control over all benefits programs and/or administration of those programs.

61. As a result of the privileged relationship between the parties and the affirmative actions of Defendant, a fiduciary relationship with Plaintiff was created. As such, Defendant owed Plaintiff the duties of a fiduciary, including but not limited to heightened duties of candor, loyalty, and good faith.

62. Defendant, through its own actions and inactions as well as the actions and inactions of his agents, breached its fiduciary duty to Plaintiff to the direct financial detriment of the Plaintiff and the Plaintiff class.

63. As a direct and proximate result of the breach of duty by Defendant, Plaintiff, and each member of the Plaintiff class, have suffered damages in an amount to be proven at trial, in excess of $75,000.00.

64. Defendant's conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights of the Plaintiff Class, inclusive of Plaintiff and the Defendant's other employees, thereby entitling Plaintiff and the class to recover punitive and/or exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

## SECOND CAUSE OF ACTION
## (Violation of Fair Labor Standards Act)

65. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

66. At all relevant times herein alleged, the Defendant was engaged in commerce, both interstate and intra-state, as the term is defined by the Fair Labor Standards Act.

67. At all relevant times herein alleged, the Plaintiff, and all members of the putative class, were individually covered by the FLSA and were the employees of the Defendant.

68. Based upon the information know known, Defendant has wrongfully withheld wages from the Plaintiff in excess of $8,500---equal to least 537 hours at the Plaintiff's hourly base wage of 16.75, and 338 hours at Plaintiff's overtime rate.

69. Defendant's failure to pay Plaintiff her earned wages was actively concealed by the Defendant and was willful.

70. Plaintiff states that the Defendant knowingly and without the Plaintiff's consent exerted control over the Plaintiff's earnings.

71. In addition to the Plaintiff, upon information and belief, the Defendant's theft of employee wages was endemic and company-wade, across multiple facilities.

72. Individuals comprising the Plaintiff class include all employees of the Defendant that were subject to the same fraudulent payroll deductions imposed upon the Plaintiff.

73. The amount of damages suffered by the class is calculable based upon information that is in the exclusive possession, custody, and/or control of the Defendant.

74. As a direct and proximate result of the Defendant's misconduct and violation of applicable federal law, the Plaintiff, and the Plaintiff class, and each of them, have been damaged in an amount to be determined at trial, in excess of $75,000.

75. Defendant's conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights of the Plaintiff Class, inclusive of Plaintiff and the Defendant's other employees, thereby entitling Plaintiff and the class to recover punitive and/or exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

## THIRD CAUSE OF ACTION
**(ERISA Violation)**

76. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

77. Defendant, by virtue of its status as the employer of the Plaintiff, and Plaintiff class, and as a fiduciary for the Plaintiff with regards to, at minimum, the administration of the fraudulent employee benefits plans, including those for short term disability.

78. At all relevant times, the Defendant was the employer and plan administrator for the Plaintiff and Plaintiff class.

79. Through the willful and fraudulent actions and inactions of the Defendant, as set forth above, violated its duties under ERISA, subjecting the Plaintiff, and the entire Plaintiff class, to injury.

80. As a direct and proximate result of the Defendant's breach of duty, Plaintiff has been damaged in an amount to be determined at trial, in excess of $75,000.00.

81. Defendant's conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights of the Plaintiff Class, inclusive of Plaintiff and the Defendant's other employees, thereby entitling Plaintiff and the class to recover punitive and/or exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

**FOURTH AND FIFTH CAUSES OF ACTION**
**(Interference with Protected Rights, 29 U.S.C. § 1140; Retaliation)**

82. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

83. Defendant, in violation of ERISA, did discharge, discipline, and otherwise discriminate against Plaintiff, and the Plaintiff class, for exercising any right to which he is entitled under the provisions of Defendant's employee benefit plans, and to interfere with the Plaintiff's and Plaintiff class's attainment of any right to which such participant may become entitled under the plan.

84. In limiting the access of the Plaintiff to her pay and benefit records, in limiting the Plaintiff's hours, and in effecting its retaliatory discharge, the Defendant acted, at all relevant times, with the express and specific intent to violate ERISA.

85. As a direct and proximate result of the Defendant's breach of duty, Plaintiff has been damaged in an amount to be determined at trial, in excess of $75,000.00.

86. Defendant's conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights of the Plaintiff Class, inclusive of Plaintiff and the Defendant's other employees, thereby entitling Plaintiff and the class to recover punitive and/or exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

**SIXTH CAUSE OF ACTION**
**(Fraud)**

87. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

88. Plaintiff was not provided with the opportunity to 'opt-out' or reject the alleged employee benefits offered by the Defendant.

89. At all relevant times herein alleged, Plaintiff reasonably relied on the Defendant to provide the employee benefits that it represented were being paid for, in part, from the deductions from the Plaintiff's pay.

90. Defendant, made numerous material misrepresentations regarding the existence of the alleged benefits. These misrepresentations were made with, at minimum, reckless disregard for their veracity, and with the express intention that Plaintiff, and the Plaintiff class, rely upon them.

91. As a direct and proximate result of the Defendant's breach of duty, Plaintiff has been damaged in an amount to be determined at trial, in excess of $75,000.00.

92. Defendant's conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights of the Plaintiff Class, inclusive of Plaintiff and the Defendant's other employees, thereby entitling Plaintiff and the class to recover punitive and/or exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

**SEVENTH CAUSE OF ACTION**
**(Violation of Ohio Wage and Hour Laws)**

93. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

94. The Defendant acted willfully to purloin monies rightfully due and owing the Plaintiff, and the plaintiff class, by virtue of their performance of their various employment duties for the benefit of the Defendant.

95. Defendant was required by law to pay the Plaintiff, and the Plaintiff class in accordance with Ohio law.

96. The Defendant failed to do so and, through the tortious conduct described above, engaged in a fraudulent conspiracy to deprive the Plaintiff, and class, of their earned wages.

97. In addition to the Plaintiff, upon information and belief, the Defendant's theft of employee wages was endemic and company-wade, across multiple facilities.

98. Individuals comprising the Plaintiff class include all employees of the Defendant that were subject to the same fraudulent payroll deductions imposed upon the Plaintiff.

99. The amount of damages suffered by the class is calculable based upon information that is in the exclusive possession, custody, and/or control of the Defendant.

100. As a direct and proximate result of the Defendant's misconduct and violation of applicable federal law, the Plaintiff, and the Plaintiff class, and each of them, have been damaged in an amount to be determined at trial, in excess of $75,000.

101. Defendant's conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights of the Plaintiff Class, inclusive of Plaintiff and the Defendant's other employees, thereby entitling Plaintiff and the class to recover punitive and/or exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

**EIGHTH CAUSE OF ACTION**
**(Negligence)**

102. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

103. Defendant, though its provision of the employee benefit plans provided to the Plaintiff, and the Plaintiff class, had a duty to, at minimum, ensure that the plans were administered in accordance with applicable standards of care and that premium payments were timely received by the carrier to ensure coverage.

104. Defendant breached this duty of care and was, at best, negligent in the performance of its duties as a plan administrator.

105. As a direct and proximate result of the Defendant's misconduct and violation of applicable federal law, the Plaintiff, and the Plaintiff class, and each of them, have been damaged in an amount to be determined at trial, in excess of $75,000.

106. Defendant's conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights of the Plaintiff Class, inclusive of Plaintiff and the Defendant's other employees, thereby entitling Plaintiff and the class to recover punitive and/or exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

## NINTH CAUSE OF ACTION
**(Unjust Enrichment)**

107. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

108. Plaintiff states that she provided monetary payments through paycheck deductions to the Defendant throughout her employment.

109. These deductions were made with the expectation and understanding that they were for insurance benefits.

110. These deductions constitute the conferment, and knowing acceptance, of a tangible financial benefit to the Defendant.

111. Defendant's inequitable conduct has denied the Plaintiff her pay and benefits and it would be unjust for the Defendant to retain the benefits provided by Plaintiff under the circumstances and, as such, those benefits should be disgorged.

**WHEREFORE**, the Plaintiff respectfully prays for judgment against Defendant as follows:

A. That the Court enter an order certifying the Class, as defined above, and appointing undersigned counsel as Class Counsel.

B. That judgment be entered in favor of the class, and against the Defendant, in an amount to be determined at trial, in excess of $75,000;

C. That the Court award Plaintiff her reasonable attorney fees and costs incurred in the prosecution and maintenance of this action;

D. That the Court enter an assessment of punitive and/or exemplary damages against the Defendant in an amount sufficient to punish the Defendant and to dissuade such conduct in the future;

E. That the Court award all such and other further relief to which they may be entitled and/or which this Honorable Court deems equitable, proper, and just.

Dated: August 4, 2025

Respectfully Submitted,

**BARKAN & ROBON LTD.**

By: /s/ Zachary J. Murry
Zachary J. Murry (0087421)

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully Submitted,

**BARKAN & ROBON, Ltd**

By: /s/ Zachary J. Murry
Zachary J. Murry